**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **CHRISTINE CANNARELLI**,<br>3237 Dentzler Rd.<br>Parma, OH 44124<br><br>and<br><br>**CARL CANNARELLI**,<br>3237 Dentzler Rd.<br>Parma, OH 44124<br><br>       Plaintiffs,<br><br>  v.<br><br>**NATIONSTAR MORTGAGE LLC, d/b/a**<br>**MR. COOPER**,<br>c/o Corporation Service Company<br>50 W. Broad St., Ste. 1330<br>Columbus, OH 43215<br><br>      Defendant. | Case No.<br><br>Judge<br><br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiffs Christine Cannarelli and Carl Cannarelli, through counsel, for their *Complaint for Damages* against Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper, state as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.	Plaintiffs Christine Cannarelli and Carl Cannarelli (collectively, "Plaintiffs" or the "Cannarellis") are the owners of residential real property, located at and commonly known as 3237 Dentzler Rd., Parma, OH 44124 (the "Home").

2.	Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Defendant" or "Mr. Cooper") is a foreign limited liability company incorporated under the laws of the State of Delaware that maintains its headquarters and principal place of business at 8950 Cypress Waters Blvd., Dallas, TX 75019.

3.	Mr. Cooper is the servicer of a note executed by the Cannarellis (the "Note") and

of a mortgage on the Home that secures said note (the "Mortgage") (collectively, the "Loan"). A copy of the Loan is attached as **Exhibit 1**.

4.      Mr. Cooper has been the servicer of the Loan since February 1, 2019.

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA").

6.      This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

7.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

8.      This action is filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, et seq. ("Regulation X").

9.      In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

10.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

11.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

12.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

13.     Mr. Cooper is a mortgage servicer as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

14.     The Loan is a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

15.     The Loan is not a "reverse mortgage transaction" as defined by RESPA and Regulation X. 12 C.F.R. § 1024.31; *see* 12 C.F.R. § 1026.33(a) (Regulation Z).

16.     The Loan is secured by the Home which is the Cannarellis' principal residence. 12 U.S.C. § 1024.30(c)(2).

17.     Mr. Cooper is subject to the requirements of RESPA and Regulation X, and does not qualify for the exception for "small servicers"—as defined by 12 C.F.R. § 1026.41(e)(4)—nor for the exemption for a "qualified lender"—as defined by 12 C.F.R. § 617.7000.

18.     The Cannarellis assert claims for relief against Mr. Cooper for violations of the specific rules under Regulation X, as set forth, *infra*.

19.     The Cannarellis have a private right action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

20.     The Cannarellis assert statutory claims for violations of the Consumer Sales Practices Act, R.C. 1345.01, *et seq.* (CSPA) and the Residential Mortgage Lending Act, R.C. 1322.01, *et seq.* (RMLA).

## FACTUAL BACKGROUND

21.     On March 31, 2014, the Cannarellis obtained the Loan from non-party American Nationwide Mortgage Company, Inc. ("ANMC"). ANMC assigned the Mortgage to non-party Pacific Union Financial, LLC ("Pacific") on March 22, 2016. Pacific assigned the Mortgage to Mr. Cooper on October 18, 2019. *See* Exhibit 1.

22.     Non-party TIAA-FSB fka EverBank is the current owner of the Note.

23.     On May 4, 2017, the Cannarellis and Pacific entered into a Loan Modification Agreement (the "May 2017 Loan Modification") to cure an existing delinquency on the Loan.

24.     On August 4, 2017, the Cannarellis and Pacific entered into a second Loan Modification Agreement (the "August 2017 Loan Modification") to cure an existing delinquency on the Loan.

25.     Subsequently, the Cannarellis fell behind on their obligation to make monthly payments pursuant to the Loan. According to Mr. Cooper's records, the Cannarellis' last full contractual payment was received by Mr. Cooper on November 29, 2019.

26.     On March 9, 2018, Pacific initiated a foreclosure action against the Cannarellis in the Cuyahoga County Court of Common Pleas, Case No. CV-18-894317 (the "Foreclosure Action"). A copy of the docket sheet for the Foreclosure Action is attached as **Exhibit 2**.

27.     On May 15, 2018, Pacific filed a Motion for Default Judgment in the Foreclosure Action. On July 17, 2018, the Magistrate granted the Motion for Default Judgment and the Judge adopted the Magistrate's Decision on August 24, 2018. *See* Exhibit 2.

28.     The Cannarellis' prior attorney in the Foreclosure Action, Peter Cozmyk, terminated his representation of the Cannarellis on or about June 25, 2021. *See* Exhibit 2.

29.     On September 21, 2021, the Cannarellis engaged Dann Law for representation in

the Foreclosure Action and to pursue loss mitigation options.

30.    On September 22, 2021, the Cannarellis, through counsel, submitted a loss mitigation application to Mr. Cooper via facsimile (the "Application"). A copy of the Application's cover letter, Borrower Authorization of Third Party, and facsimile transmission receipt is attached as **Exhibit 3**.

31.    The Application's cover letter instructs Mr. Cooper to contact Dann Law in writing if anything further was required regarding the Application. *See* Exhibit 3.

32.    The Application contains a CFPB Borrower Authorization of Third Party that notified Mr. Cooper that the Cannarellis are represented by Dann Law. *See* Exhibit 3.

33.    Prior to the Application, the Cannarellis had not submitted a complete loss mitigation application since the Loan was modified and brought wholly current through the August 2017 Loan Modification. *See* 12 C.F.R. § 1024.41(i).

34.    On September 23, 2021, the Cannarellis, through counsel, submitted supplemental documents related to the pending Application to Mr. Cooper via facsimile (the "Supplemental Submission"). A copy of the Supplemental Submission's cover letter and facsimile transmission receipt is attached as **Exhibit 4**.

35.    The Supplemental Submission again notifies Mr. Cooper that Dann Law represented the Cannarellis. *See* Exhibit 4.

36.    Mr. Cooper filed a Pluries Praecipe for Order of Sale on September 14, 2021, and the Foreclosure Court issued a Pluries Order of Sale on September 22, 2021, but the foreclosure sale was not scheduled until September 28, 2021. *See* Exhibit 2.

37.    On September 22, 2021, the Cannarellis, through Dann Law, provided a copy of the Application to Mr. Cooper's foreclosure counsel and requested Mr. Cooper withdraw the

pending order for sale of the Home.

38.     On September 23, 2021, Mr. Cooper's foreclosure counsel responded to Dann Law acknowledging that Attorney Cozmyk no longer represented the Cannarellis.

39.     On September 23, 2021, Dann Law, on behalf of the Cannarellis, filed a Notice of Appearance in the Foreclosure Action. *See* Exhibit 2.

40.     From September 22, 2021 through October 13, 2021, neither the Cannarellis nor Dann Law received any notice acknowledging or responding to the Application or Supplemental Submission.

41.     As a result of not receiving any response from Mr. Cooper, on or about October 13, 2021, the Cannarellis, through counsel, sent the following pieces of correspondence, all classified as requests for information pursuant to 12 C.F.R. § 1024.36, to Mr. Cooper at the address designated by Mr. Cooper for receipt of requests for information and notices of error pursuant to 12 C.F.R. §§ 1024.36(b) and 1024.35(c) (the "Designated Address") via Certified Mail:

> a.  Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" seeking additional information concerning the Loan, including a transaction history of the Loan, escrow analyses, and information related to loss mitigation, among other items [Tracking No. 7021 0350 0001 4705 9880] ("RFI #1");
>
> b.  Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36 including a request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3)" seeking information concerning the Loan, specifically an itemized payoff statement and the name, address, and contact information for the current owner or assignee, master servicer, and current servicer of the Loan

[Tracking No. 7021 0350 0001 4705 9873] ("RFI #2"); and,

c.  Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" seeking information concerning the Loan, specifically servicing notes, communication logs, call recordings, and written correspondence related to all communications between Mr. Coopers and the Cannarellis concerning forbearance [Tracking No. 7021 0350 0001 4705 9866] ("RFI #3").

Copies of RFI #1, RFI #2, and RFI #3 (the "RFIs") and tracking information evidencing delivery of the RFIs are attached as **Exhibit 5**, **Exhibit 6**, and **Exhibit 7**, respectively.

42.  Mr. Cooper received the RFIs at the Designated Address on October 16, 2021. *See* Exhibits 5-7.

43.  Mr. Cooper failed to send any notice acknowledging receipt of the RFIs to the Cannarellis or Dann Law until November 14, 2021.

44.  On or about November 3, 2021, Mr. Cooper canceled the scheduled foreclosure sale of the Home. *See* Exhibit 2.

45.  On or about November 11, 2021, the Cannarellis, through counsel, sent a notice of error ("NOE #1") to Mr. Cooper to the Designated Address via Certified Mail [Tracking No. 7021 1970 0000 9947 8994]. A copy of NOE #1, without supporting enclosures, and tracking information evidencing delivery of NOE #1 is attached as **Exhibit 8**.

46.  Mr. Cooper received NOE #1 at the Designated Address on November 15, 2021. *See* Exhibit 8.

47.  Through NOE #1, the Cannarellis asserted that:

a.  Mr. Cooper failed to provide the Cannarellis with a written notice stating whether the Application was complete or incomplete, and, if incomplete, stating

the additional documentation and/or information required to complete the Application; and

b. Mr. Cooper failed to provide the Cannarellis with a written notice stating which loss mitigation options, if any, Mr. Cooper would offer to the Cannarellis on behalf of the owner or assignee of the Loan.

*See* Exhibit 8.

48. Mr. Cooper failed to send any notice acknowledging receipt of or substantially responding to NOE #1 to the Cannarellis or Dann Law.

49. On or about November 24, 2021, the Cannarellis, through counsel, sent a second notice of error ("NOE #2") to Mr. Cooper to the Designated Address via Certified Mail [Tracking No. 7021 1970 0000 9947 8994]. A copy of NOE #2, without supporting enclosures, and tracking information evidencing delivery of NOE #2 is attached as **Exhibit 9**.

50. Mr. Cooper received NOE #2 at the Designated Address on December 7, 2021. *See* Exhibit 9.

51. Through NOE #2, the Cannarellis asserted that Mr. Cooper failed to provide the Cannarellis with a written response to the items of inquiry contained in RFI #2 or an itemized payment statement as requested by RFI #2. *See* Exhibit 9.

52. On or about December 3, 2021[1], Mr. Cooper sent the Cannarellis a response to some of the items requested by the RFIs (the "RFI Response"). A copy of excerpts of the RFI Response is attached as **Exhibit 10**.

53. Through the RFI Response, it became apparent that Mr. Cooper was improperly

---

[1] Although the cover letter of the RFI Response is dated November 29, 2021, the postage indicates that the response was mailed on December 3, 2021 at the earliest. *See* Exhibit 10.

mailing correspondence to Attorney Cozmyk, instead of the Cannarellis' authorized representative, Dann Law, despite its knowledge that Attorney Cozmyk had not represented the Cannarrellis since approximately June 25, 2021 and that Dann Law has been representing the Cannarellis. *See* <u>Exhibits 2 and 10</u>.

54.     For the first time, the Cannarellis saw a letter dated November 2, 2021, improperly addressed to Attorney Cozmyk, claiming that they did not provide Mr. Cooper with the requested documents in order for Mr. Cooper to review the Application (the "Resolution Letter"). *See* <u>Exhibit 10</u>.

55.     On December 23, 2021, the Cannarellis, through counsel, submitted a Request for Forbearance due to the COVID-19 Pandemic (the "Request for Forbearance") to Mr. Cooper via facsimile and Certified Mail, asking that Mr. Cooper enter the Cannarellis into a six (6) month forbearance plan pursuant to the CARES Act of 2020 and Mortgagee Letters 2021-18 and 2021-24 regarding COVID-19 Recovery Loss Mitigation Options and the Extension for COVID-19 Forbearance. A copy of the Request for Forbearance, without supporting enclosures, and tracking information evidencing delivery of the Request for Forbearance is attached as **Exhibit 11**.

56.     Mr. Cooper failed to send any notice acknowledging receipt of or substantially responding to the Request for Forbearance to the Cannarellis or Dann Law.

57.     On or about January 20, 2022, Mr. Cooper sent correspondence to the Cannarellis claiming that it could not provide a payoff quote at that time because "fees and costs needed to be ordered". Mr. Cooper claimed that it would provide a payoff quote by February 11, 2022. A copy of the January 20, 2022 correspondence is attached as **Exhibit 12**.

58.     On or about January 24, 2022, Mr. Cooper filed a Second Pluries Order of Sale in the Foreclosure Action, seeking to sell the Home at a foreclosure sale. *See* <u>Exhibit 2</u>.

59.     On or about February 2, 2022, the Cannarellis, through counsel, sent a third notice of error ("NOE #3") to Mr. Cooper to the Designated Address via Certified Mail [Tracking No. 7021 1970 0000 4125 8569]. A copy of NOE #3, without supporting enclosures, and tracking information evidencing delivery of NOE #3 is attached as **Exhibit 13**.

60.     Mr. Cooper received NOE #3 at the Designated Address on February 7, 2022. *See* Exhibit 13.

61.     Through NOE #3, the Cannarellis asserted that

   a.   Mr. Cooper filed the Second Pluries Praecipe for Order of Sale on January 24, 2022, despite Mr. Cooper's receipt of the Application, Supplemental Submission, NOE #1, and Request for Forbearance;

   b.   Mr. Cooper failed to enter them into a six (6) month forbearance as requested by the Request for Forbearance; and,

   c.   Mr. Cooper imposed excessive and improper fees to the Loan in the amount of $2,801.40.

*See* Exhibit 13.

62.     On February 24, 2022, Mr. Cooper sent Attorney Cozmyk, and not the Cannarellis or Dann Law, the promised payoff quote. A copy of the Payoff Quote is attached as **Exhibit 14**.

63.     On or about March 22, 2022, Mr. Cooper canceled the scheduled foreclosure sale of the Home. *See* Exhibit 2.

64.     On or about March 23, 2022, Mr. Cooper sent the Cannarellis a response to NOE #3 (the "NOE #3 Response"). A copy of excerpts of the NOE #3 Response is attached as **Exhibit 15**.

65.     Through the NOE #3 Response, Mr. Cooper claimed that it received the

Application and Supplemental Submission, but "issued" correspondence dated September 24 and 25, 2021 (the "Missing Documents Letters"). *See* Exhibit 15.

66.     This was the first time that the Cannarellis saw the Missing Documents Letters. These letters are not present in the enclosures received with the RFI Response. *See* Exhibits 10 and 15.

67.     The Missing Document Letters were improperly addressed to Attorney Cozmyk. *See* Exhibit 15.

68.     The NOE #3 Response wholly fails to address the Request for Forbearance. *See* Exhibit 15.

69.     The NOE #3 Response makes a bald claim that a "$400.00 appraisal fee assessed on October 28, 2021 … was accurately assessed due to the modification review that was in progress at the time," while failing to address the other fees discussed in NOE #3 or the excessive nature of such fees. *See* Exhibit 15.

70.     On May 5, 2022, the Cannarellis, through their loss mitigation representative, contacted Mr. Cooper to request review for a FHA Recovery Modification. During this call, Mr. Cooper improperly demanded that the Cannarellis submit a written application before Mr. Cooper would perform the review. The representative provided all information necessary for the Cannarellis to be reviewed for a FHA Recovery Modification.

71.     During the conversation, Mr. Cooper improperly advised that the Cannarellis must be on or have been on Pandemic Forbearance in order for Mr. Cooper to review them for a FHA Recovery Modification. Mr. Cooper offered to consider the Cannarellis for Pandemic Forbearance and the representative submitted all the required information. As a result, the Cannarellis were approved for Pandemic Forbearance and the payments due for May through October 2022 are

deferred.

72.     As a result of Mr. Cooper failing to review the Cannarellis for a FHA Recovery Modification and continuing to mishandle the loss mitigation progress for the Loan, on or about May 18, 2022, the Cannarellis, through counsel, sent a fourth notice of error ("NOE #4") to Mr. Cooper to the Designated Address via Certified Mail [Tracking No. 7021 2720 0001 9507 3608]. A copy of NOE #4 is attached as **Exhibit 16**.

**IMPACT AND DAMAGES**

73.     Mr. Cooper's actions, in failing to properly respond to the Cannarellis' loss mitigation submissions, requests for information, and subsequently refusing to reasonably investigate and/or correct its erroneous conduct, have caused the Cannarellis to incur attorneys' fees and costs in attempts to obtain such information and correct such errors.

74.     Mr. Cooper's improper actions caused the Cannarellis to suffer from actual and proximate damages including, but not limited to:

> a.   Legal fees, costs, and expenses to submit the Application, Supplemental Submission, three RFIs, and four NOEs to Mr. Cooper in a good faith attempt to request a modification of the Loan, obtain information to ascertain the nature of the problems at hand and to otherwise amicably resolve this matter, or to have Mr. Cooper mitigate the harm caused to the Cannarellis to which they did not receive a proper or adequate responses;
>
> b.   Legal fees, costs, and expenses related to the defense of the Foreclosure Action;
>
> c.   Significant delay in the loss mitigation process and rehabilitation of their credit;
>
> d.   Improper fees and charges imposed on the Loan and the attempted collection of such fees, including late fees and other default servicing related fees as well as

"Loss Mitigation Fees" for which the Cannarellis are personally obligated or which otherwise negatively impacts any equity in the Home to which they are entitled; and,

e.  Severe emotional distress driven by Mr. Cooper's failure to properly handle the Cannarellis' loss mitigation requests and by justified fear that such blatant indifference would result in the sale of the Home at a foreclosure sale which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## PATTERN AND PRACTICE OF MR. COOPER'S VIOLATIONS OF RESPA AND REGULATION X

75.     Mr. Cooper's actions are part of a pattern and practice of behavior in violation of the Cannarellis' rights and in abdication and contravention of Mr. Cooper's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA. Specifically, as discussed, *infra*, Mr. Cooper has violated 12 C.F.R. § 1024.41 at least two times, 12 C.F.R. § 1024.36 at least six times, and 12 C.F.R. § 1024.35 at least four times.

76.     As of the filing of this Complaint, Mr. Cooper has had Six Thousand Seven Hundred Thirty-Nine (6,739) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints/.

77.     As of the filing of this Complaint, Mr. Cooper has had Seven Thousand Three Hundred Fifty-One (7,351) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification,

collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints/.

78.     The Cannarellis have reviewed the CFPB's consumer complaint database and have identified other similar alleged RESPA violations by Mr. Cooper against other borrowers. In particular, the Cannarellis have reviewed the fifteen (15) consumer complaints attached hereto and identified as **Group Exhibit 17**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that Mr. Cooper has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

## COUNT ONE:
## VIOLATIONS OF 12 C.F.R. § 1024.41(b) AND 12 U.S.C. § 2605(k)

79.     The Cannarellis restate and incorporate all of the allegations contained in paragraphs 1 through 78 in their entirety, as if fully rewritten herein.

80.     12 C.F.R. § 1024.41(a) provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

81.     12 C.F.R. § 1024.41(b)(2), in relevant part, provides:

(i) If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall:

(B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete.

82.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3) provides that if no foreclosure sale is scheduled as of the date a loss mitigation application is received, the application is considered to have been received more than ninety (90) days before

any foreclosure sale.

83.     Mr. Cooper filed a Pluries Praecipe for Order of Sale on September 14, 2021, and the Foreclosure Court issued a Pluries Order of Sale on September 22, 2021, but the foreclosure sale was not scheduled until September 28, 2021. *See* Exhibit 2.

84.     Mr. Cooper received the Application, with authorizations directing Mr. Cooper to respond to Dann Law, on September 22, 2021. *See* Exhibit 3.

85.     Therefore, at the time Mr. Cooper received the Application and Supplemental Submission, no foreclosure sale of the Home was scheduled.

86.     Within five (5) days, excluding legal public holidays, Saturdays, and Sundays, of September 22, 2021, that is, on or before September 29, 2021, Mr. Cooper was required to send the written notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B) to the Cannarellis at the Home or Dann Law, as authorized by the Cannarellis through the CFPB Borrower Authorization of Third Party attached to the Application.

87.     Mr. Cooper failed to notify the Cannarellis or their authorized attorney, Dann Law, or otherwise provide them with the Missing Documents Letters until the receipt of the NOE #3 Response on or about March 23, 2022.

88.     Mr. Cooper's failure to provide the Cannarellis or their authorized attorney, Dann Law, with a written notice by September 29, 2021 constitutes a violation of 12 C.F.R. § 1024.41(b)(2)(i)(B) and 12 U.S.C. § 2605(k)(1)(E).

89.     12 C.F.R. § 1024.41(b)(1) provides that "[a] servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."

90.     As the Cannarellis discovered months later, on or about September 24 and 25, 2021, Mr. Cooper purportedly sent the Missing Documents Letters in response to the Application to the

Cannarellis' prior attorney, Peter Cozmyk. *See* Exhibit 15.

91.    The Cannarellis have not received the Missing Documents Letters from Attorney Cozmyk.

92.    If Mr. Cooper had carefully reviewed the Application and Supplemental Submission, it would have discovered that any response should have been mailed to Dann Law as instructed. *See* Exhibits 3-4.

93.    As noted by its foreclosure counsel, Mr. Cooper was aware that Attorney Cozmyk no longer represented the Cannarellis.

94.    Mr. Cooper's actions in addressing the Missing Documents Letters to Attorney Cozmyk constitutes Mr. Cooper's failure to exercise reasonable diligence in obtaining missing or incomplete information and/or documents to complete the Application in violation of 12 C.F.R. § 1024.41(b)(1) and and 12 U.S.C. § 2605(k)(1)(E).

95.    Mr. Cooper's actions caused the Cannarellis to suffer actual damages, including, but not limited to, the attorneys' fees incurred for the time in preparing the RFIs and NOE #1 and NOE #3, the postage costs for mailing the RFIs and NOE #1 and NOE #3, the attorneys' fees incurred in defending the Foreclosure Action, severe emotional distress, and credit damages. *See* ¶ 74.

96.    Further, Mr. Cooper's failure to comply with 12 C.F.R. § 1024.41(b) caused the Cannarellis' attorneys' fees and costs associated with the preparation of the Application and Supplemental Submission to metamorphose into damages. *Marais v. Chase Home Fin., LLC* (Marais II), 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); *see Marais v. Chase Home Fin. LLC* (Marais I), 736 F.3d 711, 721 (6th Cir. 2013); *Pope v. Carrington Mortg. Servs., LLC*, No. 1:18-CV-240, 2018 U.S. Dist. LEXIS 98413, at *11 (N.D. Ohio June 12, 2018) ("But other courts have

held, and the Sixth Circuit has suggested, that a plaintiff can establish actual RESPA damages when the plaintiff incurred expenses submitting paperwork to a lender, but the lender 'ignored its statutory duties to adequately respond.'").

97.     Mr. Cooper's actions are believed to be part of a pattern and practice of behavior in conscious disregard for the Cannarellis' rights.

98.     As a result of Mr. Cooper's actions, Mr. Cooper is liable to the Cannarellis for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

99.     Additionally, the Cannarellis request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

### COUNT TWO:
### VIOLATIONS OF 12 C.F.R. § 1024.36 AND 12 U.S.C. § 2605(k)

100.     The Cannarellis restate and incorporate all of the allegations contained in paragraphs 1 through 78 in their entirety, as if fully rewritten herein.

101.     "A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a).

102.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

103.     "Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error." 12 C.F.R. § 1024.36(c).

104.     A servicer must respond to a request for information by:

> (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or
>
> (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

105. Furthermore, a servicer must properly respond to a request for information within the following deadlines:

> A servicer must comply with the requirements of paragraph (d)(1) of this section:
>
> (A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and
>
> (B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

12 C.F.R. § 1024.36(d)(2)(i).

106. The RFIs each constitute a request for information as defined by 12 C.F.R. § 1024.35(a) as they are written requests from the Cannarellis that included their names, mortgage loan account number, and property address and requested information related to the Loan. *See* Exhibits 5-7.

107. On October 13, 2021, the Cannarellis, through counsel, submitted the RFIs to Mr. Cooper at its Designated Address. *See* Exhibits 5-7.

108. Mr. Cooper received the RFIs at the Designated Address on October 16, 2021. *See* Exhibits 5-7.

109. Mr. Cooper was required to provide written acknowledgment of the RFIs by

October 22, 2021, or within five (5) business days of receiving the RFIs.

110.   Mr. Cooper failed to send any notice acknowledging receipt of the RFIs to the Cannarellis or Dann Law until November 14, 2021.

111.   Although the Cannarellis have not suffered actual monetary damages as a result of Mr. Cooper's failure to timely and properly acknowledge receipt of the RFIs, Mr. Cooper's conduct demonstrates a pattern and practice of noncompliance with its RESPA obligations.

**(RFI #1)**

112.   RFI #1 requested, *inter alia*:

> 9.   A copy of any written correspondence that you sent to the Borrowers pursuant to or otherwise in compliance with 12 C.F.R. § 1024.41(b)(2)(i)(B) regarding the Loan from January 10, 2014 to the present. In other words, please provide a copy of any written correspondence you sent to the Borrowers notifying the Borrowers as to whether any submitted loss mitigation application was complete or incomplete, and if incomplete, stating what documentation and/or information was necessary to complete such application.

*See* Exhibit 5.

113.   On December 3, 2021, Mr. Cooper sent the RFI Response to the Cannarellis but failed to respond to RFI #1 Request # 9. *See* Exhibit 10.

114.   As shown by the Response to NOE #3, Mr. Cooper failed to enclose the Missing Documents Letters with the RFI Response. *See* Exhibit 15.

115.   Mr. Cooper's actions constitute a violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E) and has caused the Cannarellis to suffer actual damages as detailed, *supra*, at ¶ 74, including, but not limited to incurring attorneys' fees and costs associated with the preparing and sending of NOE #3, which would not have been necessary but for Mr. Cooper's failure to properly respond to RFI #1.

116.    Further, Mr. Cooper's failure to comply with 12 C.F.R. § 1024.36(d) caused the Cannarellis' attorneys' fees and costs associated with the preparation of RFI #1 to metamorphose into damages. *See Marais I* and *Marais II*.

117.    Mr. Cooper's actions are part of a pattern and practice of behavior in conscious disregard for the Cannarellis' rights and in abdication of Mr. Cooper's obligations under RESPA and Regulation X.

118.    As a result of Mr. Cooper's actions, Mr. Cooper is liable to the Cannarellis for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

119.    Additionally, the Cannarellis request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**(RFI #2)**

120.    Mr. Cooper was required to provide a written response to RFI #2 by October 29, 2021, or within ten (10) business days of receiving RFI #2, as RFI #2 was a request seeking the identity and contact information for the owner and/or assignee of the Loan. *See* <u>Exhibit 6</u>; 12 C.F.R. § 1024.36(d)(2)(i)(A).

121.    A servicer may not extend the time period for requests for information governed by 12 C.F.R. § 1024.36(d)(2)(i)(A). 12 C.F.R. § 1024.36(d)(2)(ii).

122.    Mr. Cooper failed to send written correspondence to the Cannarellis providing them with the identity and contact information for the owner of the Loan by October 29, 2021.

123.    Mr. Cooper did not provide the Cannarellis with identity and contact information for the owner of the Loan until Mr. Cooper mailed the RFI Response on December 3, 2021. *See* <u>Exhibit 10</u>.

124.    Mr. Cooper's actions constitute a violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C.

§ 2605(k)(1)(E) and has caused the Cannarellis to suffer actual damages as detailed, *supra*, at ¶ 74, including, but not limited to incurring attorneys' fees and costs associated with the preparing and sending of NOE #2, which would not have been necessary but for Mr. Cooper's failure to properly respond to RFI #2.

125.    Further, Mr. Cooper's failure to comply with 12 C.F.R. § 1024.36(d) caused the Cannarellis' attorneys' fees and costs associated with the preparation of RFI #2 to metamorphose into damages. *See Marais I* and *Marais II*.

126.    Mr. Cooper's actions are part of a pattern and practice of behavior in conscious disregard for the Cannarellis' rights and in abdication of Mr. Cooper's obligations under RESPA and Regulation X.

127.    As a result of Mr. Cooper's actions, Mr. Cooper is liable to the Cannarellis for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

128.    Additionally, the Cannarellis request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**(RFI #3)**

129.    RFI #3 requested three items that were narrowly tailored in time and subject matter:

1.  Servicing notes and communication logs related to Mr. Cooper's communications with the Cannarellis related to forbearance, from March 1, 2020 to present;
2.  Copies or recordings of communications between Mr. Cooper and the Cannarellis related to forbearance, from March 1, 2020 to present;
3.  Copies of written correspondence between the Cannarellis and Mr. Cooper related to forbearance.

*See* Exhibit 7.

130.    On December 3, 2021, Mr. Cooper sent the RFI Response to the Cannarellis but failed to provide any information or documents related requested by RFI #3. *See* Exhibit 10.

131.    In the RFI Response, Mr. Cooper only addressed RFI #3 Request #2. *See* <u>Exhibit 10</u>.

132.    Confusingly, Mr. Cooper states that the Cannarellis requested "copies of all recorded calls or written transcripts of calls on the account." Mr. Cooper stated that the request, as mischaracterized, was "unduly burdensome" and that it did not create transcripts of calls. Mr. Cooper invited the Cannarellis to provide a specific date so it can investigate and research. *See* <u>Exhibit 10</u>.

133.    However, RFI #3 specifically limits its temporal scope to March 1, 2020 through the present, and did not request "all" recorded calls or any written transcripts, but instead communications related to forbearance. *See* <u>Exhibit 7</u>.

134.    The RFI Response did not enclose any servicing notes, communication logs, or written correspondence related to forbearance. *See generally* <u>Exhibit 10</u>.

135.    Mr. Cooper's failure to comply with 12 C.F.R. § 1024.36(d) caused the Cannarellis' attorneys' fees and costs associated with the preparation of RFI #3 to metamorphose into damages. *See Marais I* and *Marais II*.

136.    Further, the Cannarellis have been deprived of information and documents that they are entitled to receive from their mortgage servicer.

137.    Mr. Cooper's actions are part of a pattern and practice of behavior in conscious disregard for the Cannarellis' rights and in abdication of Mr. Cooper's obligations under RESPA and Regulation X.

138.    As a result of Mr. Cooper's actions, Mr. Cooper is liable to the Cannarellis for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

139.    Additionally, the Cannarellis request reasonable attorneys' fees and costs incurred

in connection with this action. 12 U.S.C. § 2605(f)(3).

<u>**COUNT THREE:**</u>
**VIOLATIONS OF 12 C.F.R. § 1024.35 AND 12 U.S.C. § 2605(k)**

140.    The Cannarellis restate and incorporate all of the allegations contained in paragraphs 1 through 78 in their entirety, as if fully rewritten herein.

141.    "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

142.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

143.    A servicer must respond to a notice of error by either:

(A)    Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)    Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

144.    A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

    (A) Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

    (B) Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

    (C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i).

145. "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

146. A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

**(NOE #1)**

147. NOE #1 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a written notice from the Cannarellis that included their names, mortgage loan account number, and property address and asserts an error that they believed to have occurred. *See* Exhibit 8.

148. The Cannarellis sent NOE #1 to Mr. Cooper at the Designated Address and Mr. Cooper received such notice at such address on November 15, 2021. *See* Exhibit 8.

149. Through NOE #1, the Cannarellis asserted that:

    a. Mr. Cooper failed to provide the Cannarellis with a written notice stating whether the Application was complete or incomplete, and, if incomplete, stating

the additional documentation and/or information required to complete the Application; and

b. Mr. Cooper failed to provide the Cannarellis with a written notice stating which loss mitigation options, if any, Mr. Cooper would offer to the Cannarellis on behalf of the owner or assignee of the Loan.

*See* Exhibit 8.

150.    Mr. Cooper was required to send a written response to NOE #1 meeting the requirements of 12 C.F.R. § 1024.35(e) within thirty (30) days of receipt, excluding legal public holidays, Saturdays, and Sundays of November 15, 2021—that is, on or before December 29, 2021. *See* 12 C.F.R. § 1024.35(e)(3)(i)(C).

151.    Mr. Cooper failed to send any notice acknowledging receipt of or substantially responding to NOE #1 to the Cannarellis or Dann Law.

152.    Mr. Cooper failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as Mr. Cooper did not admit that any errors occurred as alleged in NOE #1.

153.    Mr. Cooper did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear from the lack of any response to NOE #1 that Mr. Cooper did not perform a reasonable investigation into the errors alleged through NOE #1.

154.    Mr. Cooper's failure to properly respond to NOE #1 by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOE #1 constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) and has caused the Cannarellis to suffer actual damages as detailed, *supra*, at ¶ 74, including, but not limited to incurring attorneys' fees and costs associated with the preparing and sending of NOE #3, which would not have been necessary but for Mr. Cooper's failure to properly

respond to NOE #1.

155.     Further, Mr. Cooper's failure to comply with 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) caused the Cannarellis' attorneys' fees and costs associated with the preparation of NOE #1 to metamorphose into damages. *See Marais I* and *Marais II*.

156.     Mr. Cooper's actions are part of a pattern and practice of behavior in conscious disregard for the Cannarellis' rights and in abdication of Mr. Cooper's obligations under RESPA and Regulation X.

157.     As a result of Mr. Cooper's actions, Mr. Cooper is liable to the Cannarellis for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

158.     Additionally, the Cannarellis request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**(NOE #2)**

159.     NOE #2 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a written notice from the Cannarellis that included their names, mortgage loan account number, and property address and asserts an error that they believed to have occurred. *See* Exhibit 9.

160.     The Cannarellis sent NOE #2 to Mr. Cooper at the Designated Address and Mr. Cooper received such notice at such address on December 7, 2021. *See* Exhibit 9.

161.     Through NOE #2, the Cannarellis asserted that Mr. Cooper failed to provide the Cannarellis with a written response to the items of inquiry contained in RFI #2 or provide a timely and accurate payoff balance. *See* Exhibit 9.

162.     Mr. Cooper was required to send a written response to NOE #2 meeting the requirements of 12 C.F.R. § 1024.35(e) within seven (7) days of receipt, excluding legal public holidays, Saturdays, and Sundays of December 7, 2021—that is, on or before December 16, 2021.

*See* 12 C.F.R. § 1024.35(e)(3)(i)(A).

163.    Through its January 20, 2022 correspondence, Mr. Cooper admits that it failed to timely provide an accurate payoff quote. *See* <u>Exhibit 12</u>.

164.    Mr. Cooper is not permitted to extend the time period for responding to errors asserted under 12 C.F.R. § 1024.35(b)(6), (9), or (10). 12 C.F.R. § 1024.35(e)(3)(ii).

165.    On February 24, 2022, nearly four months after the expiration of the time period to respond to a request for an accurate payoff balance, Mr. Cooper sent Attorney Cozmyk, and not the Cannarellis or Dann Law, the promised payoff quote. *See* <u>Exhibit 14</u>.

166.    Mr. Cooper failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as Mr. Cooper did not admit that any errors occurred as alleged in NOE #2.

167.    Mr. Cooper did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear from its continued failure to provide an accurate payoff balance that Mr. Cooper did not perform a reasonable investigation into the errors alleged through NOE #2.

168.    Mr. Cooper's failure to comply with 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) caused the Cannarellis' attorneys' fees and costs associated with the preparation of NOE #2 to metamorphose into damages. *See Marais I* and *Marais II*.

169.    Mr. Cooper's actions are part of a pattern and practice of behavior in conscious disregard for the Cannarellis' rights and in abdication of Mr. Cooper's obligations under RESPA and Regulation X.

170.    As a result of Mr. Cooper's actions, Mr. Cooper is liable to the Cannarellis for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

171.    Additionally, the Cannarellis request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**(NOE #3)**

172.    NOE #3 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a written notice from the Cannarellis that included their names, mortgage loan account number, and property address and asserts an error that they believed to have occurred. *See* Exhibit 13.

173.    The Cannarellis sent NOE #3 to Mr. Cooper at the Designated Address and Mr. Cooper received such notice at such address on February 7, 2022. *See* Exhibit 13.

174.    Through NOE #3, the Cannarellis asserted that

a.    Mr. Cooper filed the Second Pluries Praecipe for Order of Sale on January 24, 2022, despite Mr. Cooper's receipt of the Application, Supplemental Submission, NOE #1, and Request for Forbearance;

b.    Mr. Cooper failed to enter them into a six (6) month forbearance as requested by the Request for Forbearance; and,

c.    Mr. Cooper imposed excessive and improper fees to the Loan in the amount of $2,801.40.

*See* Exhibit 13.

175.    Mr. Cooper improperly concluded that no error occurred related to the Cannarellis' loss mitigation submissions. *See* Exhibit 15. If Mr. Cooper had performed a reasonable investigation into this error, it would have realized that it never provided the Cannarellis or Dann Law with the required notices in response to the Application. Without providing those notices, Mr. Cooper was prohibited from moving for foreclosure sales of the Home.

176.    The NOE #3 Response wholly fails to address the Request for Forbearance. *See* Exhibit 15.

177.    The NOE #3 Response only addresses one appraisal fees, in a conclosury fashion,

while failing to address the other fees discussed in NOE #3 or the excessive nature of such fees, which were asserted in great detail through NOE #3. *See* Exhibit 15.

178. Mr. Cooper failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as Mr. Cooper did not admit that any errors occurred as alleged in NOE #3.

179. Mr. Cooper did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear from its failure to address the Request for Forbearance that it did not perform a reasonable investigation into the errors alleged through NOE #3.

180. Mr. Cooper's failure to comply with 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) caused the Cannarellis' attorneys' fees and costs associated with the preparation of NOE #3 to metamorphose into damages. *See Marais I* and *Marais II*.

181. Mr. Cooper's actions are part of a pattern and practice of behavior in conscious disregard for the Cannarellis' rights and in abdication of Mr. Cooper's obligations under RESPA and Regulation X.

182. As a result of Mr. Cooper's actions, Mr. Cooper is liable to the Cannarellis for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

183. Additionally, the Cannarellis request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT FOUR:**
**VIOLATIONS OF THE CSPA, R.C. 1345.01, *et seq.***

184. The Cannarellis restate and incorporate all of the allegations contained in paragraphs 1 through 78 in their entirety, as if fully rewritten herein.

185. R.C. 1345.01(A) defines "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to

supply any of these things."

186.    A "consumer transaction" includes "transactions in connection with residential mortgages between loan officers, mortgage brokers, or nonbank mortgage lenders and their customers." R.C. 1345.01(A).

187.    Mr. Cooper and the Cannarellis engaged in multiple "consumer transactions" when Mr. Cooper collected the Cannarellis' monthly mortgage payments. R.C. 1345.01(A).

188.    The Loan signifies a contractual relationship between Mr. Cooper, the assignee of the Mortgage, and the Cannarellis. *See* ¶ 21 and Exhibit 1.

189.    Mr. Cooper is a nonbank mortgage lender licensed by the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.01, *et seq.*, as License No. RM.850005.000. *See* R.C. 1345.01(K).

190.    The Cannarellis are each a "consumer" as they engaged in "consumer transactions" with Mr. Cooper. R.C. 1345.01(D).

191.    "The [CSPA] covers transactions in connection with a residential mortgage loan between nonbank lenders and their customers whether that interaction occurs before, during, or after the transaction." *Powers v. Green Tree Servicing, L.L.C.*, 8th Dist. Cuyahoga No. 102753, 2015-Ohio-3355, at ¶ 15; *see Murphy v. Ditech Fin., L.L.C.*, 8th Dist. Cuyahoga No. 106896, 2018-Ohio-5041, ¶¶ 15-20; *Becker v. PennyMac Loan Servs.*, LLC, No. 1:20-cv-346, 2022 U.S. Dist. LEXIS 17571, at *23-27 (S.D. Ohio Feb. 1, 2022).

192.    "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.02(A).

193.    "No supplier shall commit an unconscionable act or practice concerning a consumer

transaction in connection with the origination of a residential mortgage. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.031(A).

194. Mr. Cooper committed unfair, deceptive, and/or unconscionable acts through its failure to properly handle the Cannarellis' loss mitigation submissions, requests for information, and notices of errors, as discussed, *supra*.

195. Ohio Courts have determined that the actions of a supplier in violation of 12 C.F.R. § 1024.41 constitute unfair or deceptive acts or practices. *See Washington v. Green Tree Servicing, LLC*, PIF No. 10003324 (May 5, 2017). A copy of PIF No. 10003324 is attached as **Exhibit 18**.

196. Ohio Courts have determined that the actions of a supplier in failing to properly investigate borrowers' requests to correct errors and failing to provide borrowers with requested information constitute unfair or deceptive acts or practices. *See Marias v. Chase Home Finance, LLC*, PIF No. 10003211 (June 6, 2014). A copy of PIF No. 10003211 is attached as **Exhibit 19**.

197. The Ohio Attorney General has made these determinations available for public inspection pursuant to R.C. 1345.05(A)(3).

198. Mr. Cooper's actions in failing to meet its obligations under 12 C.F.R. § 1024.35, 12 C.F.R. § 1024.36, 12 C.F.R. § 1024.41, and 12 U.S.C. § 2605(k) constitute unfair and deceptive acts or practices under R.C. 1345.02(A) and/or R.C. 1345.031(A).

199. Mr. Cooper's failure to enter the Cannarellis into a six (6) month forbearance plan pursuant to the CARES Act of 2020 and Mortgagee Letters 2021-18 and 2021-24 regarding COVID-19 Recovery Loss Mitigation Options and the Extension for COVID-19 Forbearance or otherwise respond to the Request for Forbearance constitutes unfair and deceptive acts or practices under R.C. 1345.02(A) and/or R.C. 1345.031(A).

200.    Mr. Cooper's failure to review the Cannarellis for a FHA Recovery Modification constitutes an unfair and deceptive act or practice under R.C. 1345.02(A) and/or R.C. 1345.031(A).

201.    Mr. Cooper is also liable under the RMLA, R.C. 1345.40(I), *infra*, for its unfair and deceptive acts or practices in violation of the CSPA.

202.    Mr. Cooper's conduct caused the Cannarellis to suffer actual damages, as further described, *supra*, at ¶ 74.

203.    As a result of Mr. Cooper's actions, Mr. Cooper is liable to the Cannarellis for actual damages, statutory damages, non-economic damages of up to Five Thousand Dollars ($5,000.00), treble damages, costs, and attorneys' fees pursuant to R.C. 1345.09.

<u>**COUNT FIVE:**</u>
**VIOLATIONS OF THE RMLA, R.C. 1322.01, *et seq.***

204.    The Cannarellis restate and incorporate all of the allegations contained in paragraphs 1 through 78 in their entirety, as if fully rewritten herein.

205.    On December 22, 2017, Ohio Governor John Kasich ("Kasich") signed into law Ohio House Bill 199 ("HB 199"), which made significant changes to the former Mortgage Brokers Act, R.C. 1322.01, *et seq.* HB 199 substantially broadened the scope of the statute, now renamed the Residential Mortgage Lending Act, to apply to mortgage lenders.

206.    On December 19, 2018, Kasich signed into law Ohio House Bill 489 ("HB 489"), to again broaden the scope of the RMLA to apply to mortgage servicers. HB 489 now defines "mortgage servicer" and inserts the term into sections throughout Chapter 1322. HB 489's title specifically "require[s] registration of mortgage loan servicers."

207.    Mr. Cooper is subject to the requirements of the RMLA and does not qualify for the exemptions listed in R.C. 1322.04.

208.    "No person ... shall act as a ... mortgage servicer ... without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a ... mortgage servicer ... in this state." R.C. 1322.07(A).

209.    Mr. Cooper is a mortgage servicer under the RMLA as it "holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(AA).

210.    Mr. Cooper, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

211.    Mr. Cooper is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, License No. RM.850005.000. R.C. 1322.01(GG).

212.    The Cannarellis are each a "buyer" as defined by R.C.1322.01(H), as they are individuals whose loan is serviced by a mortgage servicer, Mr. Cooper.

213.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, cannot engage in conduct that constitutes improper, fraudulent, or dishonest dealings. R.C. 1322.40(C).

214.    Mr. Cooper violated R.C. 1322.40(C) by engaging in improper and dishonest dealings by failing to provide the Cannarellis and their authorized attorneys, Dann Law, with important responses to their loss mitigation submissions, requests for information, and notices of error.

215.    Mr. Cooper violated R.C. 1322.40(C) by engaging in improper and dishonest dealings by failing to enter the Cannarellis into a six (6) month forbearance plan pursuant to the

CARES Act of 2020 and Mortgagee Letters 2021-18 and 2021-24 regarding COVID-19 Recovery Loss Mitigation Options and the Extension for COVID-19 Forbearance or otherwise respond to the Request for Forbearance.

216.    Mr. Cooper violated R.C. 1322.40(C) by engaging in improper and dishonest dealings by failing to to review the Cannarellis for a FHA Recovery Modification.

217.    Mr. Cooper's violations of the CSPA constitute violations of R.C. 1322.40(I).

218.    As a result of Mr. Cooper's conduct, Mr. Cooper is liable to the Cannarellis for actual damages, as further described, *supra*, , at ¶ 74. as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52.

219.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and: (2) Follow reasonable and lawful instructions from the buyer; (3) Act with reasonable skill, care, and diligence; [and] (4) Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan[.] R.C. 1322.45(A).

220.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

221.    Mr. Cooper violated R.C. 1322.45(A)(2) by failing to follow the Cannarellis' reasonable and lawful instruction to communicate with Dann Law, which resulted in Mr. Cooper failing to consider their loss mitigation requests, as shown by the Resolution Letter.

222.    Mr. Cooper violated R.C. 1322.45(A)(2) failing to follow the Cannarellis' reasonable and lawful instruction through its failure to enter the Cannarellis into a six (6) month forbearance plan pursuant to the CARES Act of 2020 and Mortgagee Letters 2021-18 and 2021-

24 regarding COVID-19 Recovery Loss Mitigation Options and the Extension for COVID-19 Forbearance.

223.    Mr. Cooper violated R.C. 1322.45(A)(2) by failing to follow the Cannarellis' reasonable and lawful instruction through its failure to review the Cannarellis for a FHA Recovery Modification.

224.    Mr. Cooper violated R.C. 1322.45(A)(3) and (4) by failing to act with reasonable skill, care, and diligence and in good faith and with fair dealing when handling the Cannarellis' loss mitigation submissions, requests for information, and notices of errors, as discussed, *supra*.

225.    Mr. Cooper violated R.C. 1322.45(A)(3) and (4) by failing to act with reasonable skill, care, and diligence and in good faith and with fair dealing through its failure to enter the Cannarellis into a six (6) month forbearance plan pursuant to the CARES Act of 2020 and Mortgagee Letters 2021-18 and 2021-24 regarding COVID-19 Recovery Loss Mitigation Options and the Extension for COVID-19 Forbearance or otherwise respond to the Request for Forbearance.

226.    Mr. Cooper violated R.C. 1322.45(A)(3) and (4) by failing to act with reasonable skill, care, and diligence and in good faith and with fair dealing through its failure to review the Cannarellis for a FHA Recovery Modification.

227.    As a result of Mr. Cooper's conduct, Mr. Cooper is liable to the Cannarellis for actual damages, as further described, *supra*, , at ¶ 74, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.45(D).

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiffs Christine Cannarelli and Carl Cannarelli respectfully request that this Court enter an Order granting Judgment against Defendant Nationstar Mortgage LLC

d/b/a Mr. Cooper as follows:

A.    Actual damages in an amount to be determined at trial for the allegations contained in Counts One through Five;

B.    Statutory damages of Two Thousand Dollars ($2,000.00) per violation of RESPA contained in Counts One through Three;

C.    Treble damages for the allegations contained in Count Four;

D.    Non-economic damages of up to Five Thousand Dollars ($5,000.00) for the allegations contained in Count Four;

E.    Costs and reasonable attorneys' fees as to all Counts; and,

F.    Such other relief which this Court may deem appropriate.

## **JURY DEMAND**

Plaintiffs Plaintiffs Christine Cannarelli and Carl Cannarelli hereby respectfully demand a trial by jury on all such claims that may be so tried.

Respectfully submitted,

/s/ *Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)
**Dann Law**
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Christine*
*Cannarelli and Carl Cannarelli*